UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE R. ZAZUETA,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | Case No. CV 08-2199 JC<br><br>MEMORANDUM OPINION |

**I.    SUMMARY**

On April 7, 2008, plaintiff Rene R. Zazueta ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; April 7, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

### A. Previously Adjudicated Application

On September 27, 1999, plaintiff previously filed an application for Supplemental Security Income benefits.  (Administrative Record ("AR") 43).  An ALJ (the "prior ALJ") examined the medical record and heard testimony from plaintiff on March 15, 2002.  (AR 43).

On March 28, 2002, the prior ALJ issued an unfavorable decision denying benefits based upon the ALJ's conclusion that plaintiff was not disabled at any time through the date of the decision.  (AR 45).  Specifically, the prior ALJ found: (1) plaintiff did not have a severe impairment; and (2) plaintiff's subjective complaints were not credible.  (AR 45).

### B. Application In Issue

On March 18, 2004, plaintiff filed a subsequent application for Supplemental Security Income benefits which is in issue in the instant action.  (AR 71-75).  Plaintiff asserted that he became disabled in October 2003, due to (1) chronic sinus problems resulting in pain/headaches; (2) hearing difficulties; (3) visual difficulties; (4) pain and loss of strength in his left arm; and (5) pain in his right shoulder.  (AR 33, 35-36, 80).  The ALJ examined the medical record and
///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

heard testimony from plaintiff, who was represented by counsel, on April 10, 2006. (AR 29-37).

On July 12, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 24). Specifically, the ALJ found: (1) plaintiff had failed to demonstrate that he suffered from a severe impairment; (2) plaintiff's complaints of disabling limitations were not credible; and (3) plaintiff had failed to rebut the presumption of continuing non-disability.[2] (AR 23).

The Appeals Council denied plaintiff's application for review. (AR 5-7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any

---

[2]A prior final determination that a claimant is not disabled creates a presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985); Lyle v. Secretary, 700 F.2d 566, 568 (9th Cir. 1983). The claimant can, however, overcome this burden by proving "changed circumstances," such as the existence of an impairment not previously considered, an increase in the severity of an impairment, or a change in the claimant's age category. See Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (finding two changed circumstances – new allegation of mental impairment not raised in prior application or addressed in prior denial and fact that claimant was approaching advanced age); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (attainment of advanced age constitutes changed circumstance precluding application of res judicata to first administrate law judge's ultimate finding against disability because advanced age often outcome-determinative under Medical-Vocational grids). Plaintiff here does not challenge the ALJ's determination that he failed to rebut the presumption of continuing disability.

other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work?[3] If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

---

[3] An impairment is severe if it significantly limits one's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment is "non-severe" if it does not significantly limit one's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted). Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb, 433 F.3d at 687; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulations applied here.").

|   |     |                                                                                   |
|---|-----|-----------------------------------------------------------------------------------|
|   | (4) | Does the claimant possess the residual functional capacity to perform his past relevant work?[4] If so, the claimant is not disabled. If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

---

[4] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

5

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff asserts that the ALJ's determination at step two of the sequential evaluation process – that plaintiff did not suffer from a severe impairment – is not supported by substantial evidence because the ALJ erroneously rejected the opinion of an examining physician.[5] (Plaintiff's Motion at 3, 7-8). This Court disagrees and finds that the ALJ's rejection of the portion of the examining physician's opinion in issue and the ALJ's step two determination are supported by substantial evidence and are free from material error

### A. Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining

///
///

---

[5] Although plaintiff identifies the consulting examining physician as Dr. Kristof Siciarz, this appears to be an error as no such physician is named in the administrative record and as the pages of the administrative record to which plaintiff cites, correspond to a report prepared by consultative examiner Dr. Concepcion Enriquez. (Plaintiff's Motion at 6; AR 194-97). Accordingly, this Court presumes that plaintiff intends to refer to Dr. Enriquez.

physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6]  See id.

As with a treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).  The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  Lester, 81 F.3d at 831.

**B.** **Pertinent Facts**

**1.** **Treatment Records Relating to Sinusitis**

Medical records from plaintiff's treating physicians at LAC/USC Healthcare Network ("LAC/USC") and El Monte Comprehensive Health Center ("El Monte") reflect a long history of sinusitis and allergies.  (AR 139, 240, 376-78, 382-84, 395-96, 398, 400-01, 421, 442).

Treatment notes dated April 5, 2003, reflect that a CT scan of plaintiff's face showed "bilat [sic] nasal bone tip deformities" and that the "anterior aspect nasal septum deviate[d] to left."  (AR 139).

On July 8, 2004, plaintiff complained of bilateral nasal congestion and was assessed with nasal obstructions secondary to septal deviation.  (AR 384).

///
///
///

---

[6]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

7

On August 6, 2004, plaintiff underwent a septorhinoplasty to relieve the nasal obstruction.[7] (AR 376-78). Plaintiff nonetheless continued to complain of nasal obstruction. (AR 382-83, 395-96, 398, 400-01, 421).

X-rays of plaintiff's paranasal sinuses taken on March 23, 2006 revealed that the osseous structures had "normal appearance" with no evidence of sinusitis. (AR 442).

### 2. Treatment Records Relating to Plaintiff's Limbs

#### a. Left Arm/Shoulder

On February 24, 2004, plaintiff complained of pain and numbness in his left arm and pain in his left shoulder. (AR 413). An examination of plaintiff's left arm and shoulder revealed no evidence of tenderness, deformity, or inflammation. (AR 413). Plaintiff displayed good range of motion of the left shoulder. (AR 413). A neurological examination of plaintiff's left arm was unremarkable. (AR 414). X-rays taken on that same date revealed "normal" left arm and minimal osteoarthritis in the left shoulder. (AR 446).

On November 28, 2005, plaintiff complained of weakness in his left arm. (AR 400). During the examination, plaintiff displayed tremors in his left hand. (AR 400-01). He was subsequently referred to neurology. (AR 401).

A neurological examination performed on May 8, 2006 was essentially unremarkable. (AR 307). Noting that plaintiff's blood pressure had increased, the physician prescribed propranolol. (AR 307).

#### b. Right Shoulder

On March 23, 2006, plaintiff complained of pain in his right shoulder. (AR 398). X-rays of the right shoulder taken on May 2, 2006 revealed "mild AC joint degenerative change." (AR 440-41).

---

[7]Plaintiff alleges that he had undergone three prior surgeries due to his sinuses. (AR 33, 395, 400).

8

     **c.**  **Right Knee/Leg**

On May 4, 2004, plaintiff returned to LAC/USC, complaining of swelling over his right knee for the past year and a half after having fallen off his bike. (AR 410). He did not have any pain, weakness, paresthesia, inflammation, or tenderness in his right leg. (AR 410). X-rays of the right knee performed on that same date showed "[s]mall tibial spurs consistent with mild osteoarthritis" and "[q]uestionable small effusion." (AR 444). A second series of x-rays taken on June 23, 2004 demonstrated "[u]nremarkable right knee series, unchanged compared with prior examination." (AR 443).

    **3.**  **Consultative Examining Physician**

On May 26, 2004, Dr. Concepcion Enriquez conducted an internal medicine evaluation of plaintiff. (AR 194-97).

As to plaintiff's sinuses/nasal region, Dr. Enriquez observed that plaintiff had tenderness on the maxillary area and mild congestion of the turbinate but that his lungs were clear and he had no difficulty breathing. (AR 195, 197).

As to plaintiff's limbs, Dr. Enriquez also observed that plaintiff had normal range of motion in all extremities; normal muscle tone and strength throughout, without focal motor deficits; no joint problems; and normal gait and balance. (AR 196-97).

Dr. Enriquez opined that plaintiff could perform the full range of medium work (*i.e.*, occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; and sit, stand, or walk for six hours in an eight-hour workday).[8] (AR 197).

    **4.**  **Consultative Nonexamining Physicians**

On August 5, 2004, Dr. Darell Sharbough found that plaintiff's physical impairments were nonsevere. (AR 168-70). On August 13, 2004, Dr. Glenn

---

[8]Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

Ikawa also determined that plaintiff had no medical determinable impairment. (AR 193). On November 1, 2004, Dr. Catmon Lopez affirmed that plaintiff did not have a severe impairment. (AR 190-92).

### 5. ALJ's Assessment

As noted above, the ALJ determined that plaintiff did not have a severe impairment. In making this assessment, the ALJ discussed each of plaintiff's complaints.

First, as to plaintiff's sinus problems, the ALJ noted: (1) on August 6, 2004, plaintiff had surgery for a nasal obstruction with nasal deformity which was successful with no complications (AR 22) (citing Exhibits B2F, B6F (AR 145-67 [LAC/USC records] 190-92 [Dr. Lopez])); (2) medical records of plaintiff's treating practitioners revealed on physical examination that there was no sinus tenderness and only a minor deformity in his nasal bridge, and that the diagnosis was merely a history of allergic rhinitis/ chronic sinusitis (AR 22) (citing Exhibit B9F at 6, 12 (AR 203, 209 [LAC/USC])); (3) the medical records further showed that plaintiff's sinusitis or allergic rhinitis was amenable to treatment with no limitations found (AR 22); (4) a physical examination conducted by a state agency consultative examiner on May 26, 2004, showed that plaintiff had only tenderness and mild congestion of the turbinate, and that his lungs were clear (AR 22) (citing Exhibit B8F (AR 194-97) [Dr. Enriquez]); and (5) despite plaintiff's complaints of totally disabling pain in the nasal region, he took only anti-inflammatory medication and had not been prescribed narcotics-based pain medication ordinarily prescribed for severe and remitting pain. (AR 23).

Second, as to plaintiff's alleged visual difficulties, the ALJ noted that the records showed that plaintiff's complaints in such regard could be resolved with corrective lenses and that the alleged visual limitations did not prevent plaintiff from riding a bicycle in the public thoroughfare for varying distances. (AR 22,

///

23) (citing Exhibits 3B, B3F at 9, B4F, B8F at 2 (AR 179 [El Monte], 168-70 [Dr. Sharbough], 195 [Dr. Enriquez]).

Third, as to plaintiff's alleged hearing difficulties, the ALJ noted that there were no findings (presumably medical findings) regarding plaintiff having any significant hearing problems and observed that plaintiff showed no difficulty hearing and responding to questions posed to him by the ALJ through the interpreter. (AR 22).

Fourth, as to plaintiff's complaints regarding his right shoulder, the ALJ noted that there was an absence of clinical and diagnostic findings to support the alleged right shoulder symptoms. (AR 22).

Fifth, as to plaintiff's complaints regarding his left arm, the ALJ noted that there was a lack of any neurological findings on physical examination. (AR 22) (citing Exhibit B8F at 3-4 (AR 196-97 [Dr. Enriquez]).

The ALJ also noted that the examining internist (Dr. Enriquez) had limited plaintiff to work at the medium exertional level but noted that there was no objective evidence in the treatment records or the internist's own findings to support such limitations. (AR 22) (citing Exhibit B8F (AR 194-97) [Dr. Enriquez]).

**C. Analysis**

As noted above, even though the ALJ in many respects adopted Dr. Enriquez's opinions, the ALJ rejected Dr. Enriquez's conclusion that plaintiff was limited to medium work for two reasons: (1) there was no objective evidence in plaintiff's treatment records to support such exertional limitations; and (2) there was nothing in Dr. Enriquez's own findings to support such exertional limitations.[9] These reasons are specific, legitimate, clear, and convincing, and are

---

[9] Rather than focusing on the actual bases upon which the ALJ rejected Dr. Enriquez's conclusion, plaintiff asserts, contrary to the ALJ's express statements, that the ALJ rejected Dr. Enriquez's conclusion based upon the opinions of non-examining physicians. (Plaintiff's Motion
(continued...)

supported by substantial evidence in the record. See, e.g., Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings [.]"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"; nowhere did notes indicate reasons why claimant would be limited in ability to stand or lift); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (variance between physician's opinion and his own treatment notes may be used to deem opinion untrustworthy), cert. denied, 519 U.S. 1113 (1997).

The ALJ, as summarized above, set out a detailed and through summary of the medical evidence, his interpretation thereof, and the reasons for his findings, including the finding rejecting the portion of Dr. Enriquez's opinion that is in issue. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes v. Bowen, 881 F.2d 747, 751, 755 (9th Cir. 1989) (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

///

---

[9](...continued)
at 8). Although plaintiff does not specifically identify which one or more of the non-examining physicians is/are in issue, this Court presumes plaintiff refers to Dr. Sharbough, Dr. Ikawa, and/or Dr. Lopez, each of whom concluded that plaintiff did not have a severe impairment. (AR 168-70, 190-93). Assuming, counterfactually, that the ALJ relied upon such non-examining physicians' opinions in rejecting Dr. Enriquez's conclusion, there was no error. While plaintiff correctly notes that an ALJ may not reject an examining physician's opinion based solely on the opinion of a non-examining physician, nothing precludes an ALJ from considering the opinions of nonexamining physicians along with other evidence in the record in rejecting an examining physician's opinion. Here, as noted above, the ALJ did reject Dr. Enriquez's conclusion based upon reasons other than, or at least in addition to, the opinions of the non-examining physicians.

As noted above, none of plaintiff's treating physicians opined that plaintiff had any functional limitations, and the only abnormality noted in the entirety of Dr. Enriquez's examination was tenderness and congestion in the plaintiff's nasal region.[10] Tellingly, plaintiff points to nothing in plaintiff's treatment records or in Dr. Enrique's own findings which in any way support Dr. Enriquez's conclusion that plaintiff had exertional limitations and should be restricted to medium work.

In short, the ALJ's rejection of Dr. Enrique's conclusion that plaintiff had exertional limitations is supported by substantial evidence and is free from material error. As that is the only basis upon which plaintiff challenges the ALJ's step two determination that plaintiff does not have a severe impairment, plaintiff's claim in such regard likewise fails.[11]

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 20, 2009

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[10] The physical and neurological examinations administered by plaintiff's treating physicians failed to support Dr. Enriquez's opinion. (AR 307, 410, 413-14). Likewise, x-rays showed only mild osteoarthritis in the right knee and mild degenerative changes in the acromioclavicular joint of the right shoulder. (AR 440-41, 444). The x-rays also indicated that plaintiff's left arm was normal and his osseous structures (in his paranasal sinuses) appeared normal after the surgery. (AR 440, 442).

[11] As plaintiff has not demonstrated the existence of any changed circumstances since the prior ALJ's decision and has not otherwise disputed the applicability of the presumption of continuing non-disability, the ALJ's step two determination in this case is likewise supported by such presumption. See supra note 2.